IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL S. L.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 19-cv-1083-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff applied for disability benefits in October 2015, alleging disability as of February 11, 2012. After holding an evidentiary hearing, an ALJ denied the application on November 16, 2018. (Tr. 20-31). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

### Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ erred by failing to account for specific deficits of concentration, persistence, and pace within the residual functional capacity (RFC) finding.

---

[1] The Court will not use Plaintiff's full name in this Memorandum and Order in order to protect her privacy. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 8, 16.

2.  The ALJ erred in giving limited weight to the treating physician's opinion without consideration of the regulatory factors applicable to opinions not given controlling weight.

## **Applicable Legal Standards**

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations.[3]  Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work?  20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled.  A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four.  Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.  The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical.  Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 2019 WL 1428885, at *3 (S. Ct. Apr. 1, 2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. She determined that Plaintiff had not worked at the level of substantial gainful activity since the date of the application. She found that Plaintiff had severe impairments of right foot complex regional pain syndrome status-post multiple surgeries, chronic obstructive pulmonary disease (COPD), left shoulder tendinosis, hammertoes, anxiety disorder, and depressive disorder.

At Tr. 25, the ALJ found Plaintiff had the residual functional capacity (RFC) to:

Perform a range of sedentary work…Specifically, the claimant is able to lift up to ten pounds occasionally. He is able to stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks. He is occasionally to push/pull with his right lower extremity. He is unable to operate foot controls with

his right foot. He is unable to climb ladders/ropes/scaffolds, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. He is able to engage in frequent overhead reaching with the left upper extremity. The claimant should avoid even occasional exposure to pulmonary irritants, such as fumes, odors, dust, gases, chemicals, and poorly ventilated areas. He is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes. He requires the use of a handheld assistive device, such as a cane, at all times when standing, and the contralateral upper extremity can be used to lift/carry up to the exertional limits.

Plaintiff had no past relevant work. Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff was not disabled because he was able to do jobs which exist in significant numbers in the national economy.

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

### 1.      **Agency Forms**

Plaintiff was born in 1973 and was forty-five years old on the date of the ALJ's decision. (Tr. 198). He stopped working in November 2002. He worked as an asphalt salter from 1997 to 2002, an assembly line worker from May to October 2001, and a roofer from 2001 to 2002. (Tr. 201-02).

In a function report submitted in July 2016, Plaintiff said he is in constant pain every day which affects his ability to work. (Tr. 224). Plaintiff said his conditions affect his ability to concentrate. Plaintiff said he can follow written and spoken instructions well, he does not handle stress well, and he is "O.K." at handling changes in routine. Plaintiff said the medications he takes make him tired and groggy. (Tr. 229-31).

### 2.      Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in June 2018.  (Tr. 38). Plaintiff said he hurts so bad that he cannot concentrate.  He said the medicine only reduces his pain to a five or six out of ten, and without the medicine, his pain is "unreal."  Plaintiff said he takes Valium for anxiety and Celexa for depression.  (Tr. 55).  Plaintiff said he has no mental health therapists or counselors, and his medications make him tired and groggy. (Tr. 57).  Plaintiff said his ability to follow along with television shows depends on how bad he is hurting, the weather and the pressure change.  He said he has trouble following along with his television shows at least four or five times a month and possibly more.  (Tr. 59).

A vocational expert (VE) also testified.  The ALJ asked him a hypothetical question which corresponded to the ultimate RFC findings.  The VE testified that this person could do jobs such as a general office clerk; an inspector, tester or sorter; and an addressor.  Plaintiff's attorney asked the VE, "If due to a combination of their impairments they were off task 20% of the workday, would that have any effect on their ability to maintain employment?"  The VE said, "Based on my experience, a person would not be able to successfully maintain a job."  (Tr. 71-73).

### 3.   Relevant Medical Records

Mental health impairments are the only impairments at issue. Therefore, only Plaintiff's mental health medical records will be included.

Plaintiff presented to multiple different providers between November 2014 and April 2018 for unrelated issues.  (Tr. 267, 304, 309, 318, 321, 324, 331, 334, 341, 345, 350, 355, 358, 363, 368, 372, 381-82, 387, 392, 410, 412, 414-22, 435, 437, 456, 500, 527, 571-72, 577, 580, 583, 586, 589, 593, 603, 614, 626, 662, 678, 703, 725, 745, 774, 795, 806).  During these appointments, Plaintiff often had a negative neurological/psychological review of systems, and the providers

noted Plaintiff was alert, oriented, pleasant, cooperative, had a normal mood and affect, and was in no distress.  (Tr. 304, 309, 314-15, 318, 321, 324, 332, 334, 342, 346, 351, 356, 361, 365, 368, 374, 379, 384, 389-90, 392, 435, 437, 501, 527, 571, 573, 579, 582, 584, 586, 589, 595, 606, 616, 627, 664, 678, 703, 725, 745, 775, 796, 807).  At some appointments, the assessment included anxiety and depressive disorder, and plans included mental health medications such as Prozac, Valium, Citalopram, and Celexa.  (Tr. 267, 409-20, 460).

Plaintiff presented to the emergency department at Gateway Regional Medical Center on July 19, 2015, for unrelated issues.  Plaintiff reported no depression or anxiety, and a mental status exam revealed Plaintiff was cooperative, alert, oriented, and his behavior, mood and affect were within normal limits.  No cognitive deficits were noted.  (Tr. 279-80, 282).

Plaintiff presented to the emergency department at Gateway Regional Medical Center on August 11, 2015, for unrelated issues.  (Tr. 285).  A mental status exam revealed a pleasant mood, anxiousness, alertness, and orientation to time, place, person and situation.  No cognitive deficits were noted.  (Tr. 287-88).

Plaintiff underwent a psychological consultative examination by Stephen Vincent, a state agency consultative examiner, on September 22, 2016.  (Tr. 447).  Plaintiff reported depression due to the inability to function without pain or discomfort.  Plaintiff reported feeling discouraged, guilt, self-dislike, self-critical, irritable, agitated, worthless, and feeling as if he has nothing to look forward to.  Plaintiff reported nonrestorative sleep, anxiety, excessive worry, restlessness, edginess, and easy distraction by anxiousness and restlessness.  Plaintiff reported trouble concentrating and an inability to stay focused on tasks secondary to anxiety, and at one point he denied memory and concentration problems.  (Tr. 448).  Dr. Vincent noted Plaintiff has a history of chronic pain with subsequent development of depression and anxiety.  (Tr. 450).

Dr. Vincent noted Plaintiff was oriented to person, place, time, and situation.  He noted Plaintiff had normal speech, had a euthymic mood and affect, was not preoccupied, was cooperative, and was able to perform certain psychological tests regarding numbers, memory, and basic information.  Dr. Vincent noted Plaintiff was prescribed Citalopram and Valium.  Dr. Vincent noted Plaintiff takes Valium for "episodes of anxiety secondary to worries and concerns about his chronic pain and limitations that has preclude[d] his capacity to engage in previously enjoyable activities."  Dr. Vincent noted Plaintiff is cognitively intact, and diagnostic impressions included depression secondary to general medical conditions with major depression-like features and anxiety secondary to general medical conditions.  (Tr. 449-50).

Dr. David Karges, an orthopedic surgeon, gave his medical opinion regarding Plaintiff's social security disability claim on August 24, 2018.  Dr. Karges said he saw Plaintiff every two to three months.  He said Plaintiff's symptoms include fatigue, weakness, unstable walking, right foot pain, poor coordination, numbness, tingling, or other sensory disturbance, swelling, atrophy, and balance problems.  Dr. Karges said Plaintiff could stand/walk for less than two hours and sit at least six hours.  He said Plaintiff would need to include periods of walking around during an eight-hour workday; he would need a job that permits shifting positions at will from sitting, standing, or walking; he would need to take unscheduled breaks for fifteen minutes every four hours during an eight-hour workday; and he would need to use an assistive device to stand/walk. Dr. Karges opined Plaintiff could less than occasionally lift ten pounds or less and could never lift twenty to fifty pounds.  Dr. Karges opined Plaintiff could frequently reach in all directions, handle, finger, and feel; occasionally twist, stoop, and bend; less than occasionally climb stairs; and never crouch or climb ladders.  Dr. Karges said emotional factors such as depression, anxiety, and somatoform disorder contribute to the severity of Plaintiff's symptoms and functional limitations.

Dr. Karges said Plaintiff's pain is frequently sufficiently severe to interfere with attention and concentration. Dr. Karges said Plaintiff has marked limitations in his ability to deal with work stress. In response to a question whether Plaintiff would have difficulty working a full-time job on a sustained basis, Dr. Karges said, "Absolutely, yes." Dr. Karges said Plaintiff would be off task more than twenty percent of the time during an eight-hour workday; he would require redirection one or two times each eight-hour workday; and he would be absent from work more than three times per month due to his impairments. Dr. Karges said, "The patient has chronic pain requiring pain medicine affecting mentation." (Tr. 844-45).

## Analysis

First, Plaintiff asserts the ALJ erred by failing to account for specific deficits of concentration, persistence, and pace within the RFC finding. The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE. The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010); *Yurt v. Colvin*, 758 F.3d at 857; *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *Winsted v. Berryhill*, 915 F.3d 466, 471 (7th Cir. 2019), *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). "The ability to stick with a given task

over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620.

Here, the ALJ found that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace at step three of the sequential analysis when determining whether Plaintiff's mental impairments meet or equal a listed impairment. The ALJ noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." (Tr. 24).

In regard to Plaintiff's mental limitations, the ALJ's RFC finding says, "He is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes." Plaintiff suggests this language does not adequately account for moderate limitations in concentration, persistence or pace. More specifically, Plaintiff argues the RFC fails to address Plaintiff's ability to stick with a given task of a period of time. This Court agrees. A limitation to simple, routine and rote tasks with little to no changes does not account for difficulties in concentration arising from anxiety and depression. *Varga v. Colvin*, 794 F.3d at 815. Moreover, the ALJ used the terminology that the Seventh Circuit has continually viewed as insufficient.

There are two recent Seventh Circuit cases that speak directly to this issue: *Martin v. Saul*, 950 F.3d 369 (7th Cir. 2020) and *Crump v. Saul*, 932 F.3d 567 (7th Cir. 2019). In *Martin*, the court held the ALJ correctly accounted for Martin's concentration, persistence or pace limitations by not "assuming that restricting [Martin] to unskilled work would account for her mental impairments." *Id.* at 374. "The ALJ incorporated pace-related limitations by stating that Martin needed flexibility and work requirements that were goal-oriented." *Id.* The ALJ in *Crump* used language in the RFC that the Seventh Circuit has repeatedly found insufficient such as, "simple,

routine, repetitive tasks with few workplace changes." *Crump*, 932 F.3d at 569.  The court held the ALJ failed to incorporate limitations like Crump's likelihood of being off task twenty percent of the time.  *Id*. at 570.

Here, the ALJ did not go to lengths as the ALJ in *Martin* did.  The present case is similar to *Crump* in that the ALJ limited Plaintiff to work involving "simple, routine and rote tasks," without adding more, especially concerning persistence.  This, as established above, is not enough.  It is true, however, that the ALJ went a little farther by indicating the need for an elimination of "fast-paced production requirements" within the RFC.  Nevertheless, "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Crump*, 932 F.3d at 570.  The Seventh Circuit put it succinctly in *Martin*:

> As we have labored mightily to explain, however, the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace. . . . Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be.

950 F.3d at 373-74.  Therefore, without more, the RFC does not adequately account for moderate limitations in concentration, persistence or pace.

The Commissioner relies on *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019).  There, the Seventh Circuit rejected the plaintiff's argument that the ALJ erred by omitting a reference to a moderate limitation in concentration, persistence or pace from the RFC assessment and hypothetical question where "according to the medical evidence, his impairments surface only when he is with other people or in a crowd." *Jozefyk*, 923 F.3d at 498.  That case is distinguishable from the case at hand.  The Seventh Circuit explained its holding in *Jozefyk* in a later case:

> In closing, we owe a word to the Commissioner's reliance on our recent decision in *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). We do not read *Jozefyk* to save

> the shortfalls in the ALJ's analysis here. In *Jozefyk*, we determined that any error in formulating the RFC was harmless because the claimant had not testified about any restrictions in his capabilities related to concentration, persistence, or pace, and the medical evidence did not otherwise support any such limitations. 923 F.3d at 498. As the Commissioner concedes, the facts here are different. The medical evidence plainly shows, and the ALJ recognized, that Crump suffers from CPP limitations. And, unlike in *Jozefyk*, Crump testified consistently with the medical treatment notes about how her bipolar disorder impairs her ability to concentrate well enough to work for a sustained period.

*Crump*, 932 F.3d at 571.  Here, Plaintiff testified that the severity of his pain affects his ability to concentrate, and his medications make him tired and groggy.  (Tr. 55, 57).

The Commissioner suggests that, according to *Jozefyk*, Plaintiff should have cited to "evidence suggesting what additional limitations the ALJ needed to include accommodating his moderate limitations in concentration, persistence, or pace." Doc. 17, p. 6-7.  The Court disagrees for reasons stated above.  At Tr. 73, Plaintiff's attorney asked the VE if a person would be able to maintain employment if they were off task twenty-percent of the workday, and the VE said, "Based on my experience, a person would not be able to successfully maintain a job." (Tr. 73).  Being off task is an obvious limitation arising from impaired concentration and persistence.

Lastly, the Commissioner points out that the "B" criteria have been amended and attempts to minimize the significance of the findings of moderate limitations by pointing out that "moderate" limitation means that a claimant's ability to maintain concentration, persistence or pace independently, appropriately, effectively, and on a sustained basis is fair.  See, Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66164, 2016 WL 5341732 (Sept. 26, 2016) (effective Jan. 17, 2017).  But a moderate limitation is not the same as "no" limitation.  A "mild" limitation means that functioning is "slightly" limited and a "marked" limitation means that functioning is "seriously limited."  Moderate is between mild and marked. 81 Fed. Reg. 66138, 66164.  Therefore, a moderate limitation is more than a slight limitation, and

the ALJ may not overlook the designation of moderate limitations in the RFC.  Further, these definitions do not represent a change in the meaning of these terms:

> Third, we have used the words "mild," "moderate," "marked," and "extreme" under our prior rules for many years. Although we did not provide definitions for most of these terms until now, the definitions in final 12.00F are consistent with how our adjudicators have understood and used those words in our program since we first introduced the rating scale in 1985. As a result, the definitions we provide in these rules do not represent a departure from prior policy.

81 FR 66138, 66147.

For the reasons stated above, the ALJ did not adequately account for concentration, persistence or pace within the RFC finding.  Therefore, this requires remand.

Second, Plaintiff asserts the ALJ erred in giving limited weight to the treating physician's opinion without consideration of the regulatory factors applicable to opinions not given controlling weight.  The ALJ was not required to fully credit Dr. Karges's opinion because of that status; "while the treating physician's opinion is important, it is not the final word on a claimant's disability."  *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (internal citation omitted).  A treating source's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record.  *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016), citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Plaintiff filed his application before March 27, 2017.  The applicable regulation, 20 C.F.R. § 404.1527(c)(2), provides, in part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

If the ALJ decides not to give the opinion controlling weight, she is to weigh it applying the factors set forth in § 404.1527(c)(1)-(6).  Supportability and consistency are two important factors to consider in weighing medical opinions.  In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques [,]' and (2) it is 'not inconsistent' with substantial evidence in the record."  *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010).

Here, the ALJ explained that she gave little weight to Dr. Karges's opinion due to it being deficient because it does not articulate an objective medical basis for the limitations of standing or sitting at will, the necessity for unscheduled work breaks, or being off task.  The ALJ said, "Those limitations appear to be based on the claimant's subjective complaints, rather than on independent medical findings, and are inconsistent with the objective medical evidence of record and unsupported by the evidence as a whole."  (Tr. 28).  The ALJ further explained his reasoning at Tr. 29 regarding clinical observations related to Plaintiff's psychological functioning, such as unremarkable mental status examinations, a lack of psychological deterioration, a lack of seeking formal mental health treatment, and an ability to keep his psychological functioning stable through the use of medications.

Plaintiff's argument ignores much of the ALJ's discussion.  In general, he argues that the ALJ neither explained enough of the inconsistencies found nor did she apply the checklist of factors provided by 20 C.R.F. § 404.1527.  The ALJ need not explicitly discuss each factor of the checklist, and some are implied simply within the discussion of medical records.  See *Henke v.*

*Astrue*, 498 Fed.Appx. 636 (7th Cir. 2012).  The ALJ did discuss, although not at length, treatment provided by Dr. Karges and providers working under him regarding Plaintiff's feet at Tr. 26 and Tr. 27.  This, along with the abovementioned discussion by the ALJ, demonstrates the ALJ's consideration of the examining relationship, the treatment relationship, and other factors specified in § 404.1527.

In light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" her reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax."  *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).  Although the ALJ did not specifically indicate each factor as she considered them, the ALJ met the minimal articulation standard here.  The ALJ's discussion illustrates that the treatment records do not support the treater's opinion.  For example, she pointed out that Plaintiff had unremarkable mental status examinations with Plaintiff being fully oriented and having no evidence of thought disorder, which does not support the findings and severity of those findings by Dr. Karges.

Plaintiff's argument regarding this second issue is little more than an invitation for this Court to reweigh the evidence.  He has not identified a sufficient reason to overturn the ALJ's conclusion on this issue.  Even if reasonable minds could differ as to whether Plaintiff was disabled at the relevant time, the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence.  *Burmester*, 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).  For these reasons, this Court rejects this issue.

This Memorandum and Order should not be construed as an indication that the Court believes Plaintiff was disabled during the relevant period or that he should be awarded benefits.  On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be

determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: April 23, 2020.**


_s/ Reona J. Daly_
**Hon. Reona J. Daly**
**United States Magistrate Judge**